J. A10041/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| M.J., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | No. 3177 EDA 2016 |
| | : | |
| S.G.B. | : | |

Appeal from the Order, September 9, 2016,
in the Court of Common Pleas of Monroe County
Civil Division at Nos. 1832 CV 2014, 260 DR 2014

BEFORE:  DUBOW, J., SOLANO, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED JUNE 14, 2017**

M.J. ("Father") appeals from the September 9, 2016 order entered in the Court of Common Pleas of Monroe County permitting S.G.B. ("Mother") to relocate with the parties' minor son, A.G.J. ("Child"), from Monroe County, Pennsylvania, to Havertown Township, Delaware County, Pennsylvania.  The order also awarded shared legal custody to the parties, primary physical custody during the school year to Mother, and primary physical custody during the summer to Father.  After careful review, we affirm.

The record reflects that Child was born to the parties out of wedlock in March 2009.  At the time of Child's birth, Mother and Father lived together, but then separated in 2010.  Since their separation, Mother and Father have equally shared physical custody of Child, having initially "created a 50-50 on

paper." (Notes of testimony, 8/26/16 at 8.) Thereafter, on June 18, 2014, Mother and Father entered into a custody stipulation for shared legal and physical custody of Child. The trial court approved the parties' custody stipulation by order of the same date. (Order of court, 6/18/14.)

The trial court set forth the subsequent procedural history as follows:

> On May 2, 2016, Mother filed an Affidavit for Relocation ("Relocation") seeking primary physical custody of [Child]. After Mother filed her Relocation, Father filed a Counter-Affidavit opposing the relocation and requesting Modification. We held an evidentiary hearing on August 26, 2016. On August 29, 2016, we issued an Order and a subsequent Opinion on September 9, 20[1]6, granting Mother's request to relocate to Havertown Twp. Father filed a Notice of Appeal on September 27, 2016. Father filed his Appeal as a Children's Fast Track Appeal and included his Concise Statement of Errors Complained of on Appeal – Pa.R.A.P. 1925(a)(2).

Trial court opinion, 10/7/16 at 1. The record further reflects that the trial court filed its Rule 1925(a) opinion on October 7, 2016.

On appeal, Father raises the following issues:

> [1.] Did the trial court commit an error of law and/or abuse its discretion when denying Father's petition for primary physical custody?
>
> [2.] Did the trial court commit an error of law and/or abuse its discretion when it granted Mother's relocation to Havertown?
>
> [3.] Did the trial court commit an error of law and/or abuse its discretion when it failed to consider evidence contrary to relocation?

Father's brief at 13 (capitalization omitted).

Under the Child Custody Act ("the Act"), 23 Pa.C.S.A. §§ 5321-5340, our standard of review in custody cases is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa.Super. 2012) (citation omitted).

Moreover, we reiterate that

> [t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa.Super. 2006) (citation omitted).

With respect to an abuse of discretion, it is well settled that

> [a]n abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

*Bulgarelli v. Bulgarelli*, 934 A.2d 107, 111 (Pa.Super. 2007) (quotation marks omitted).

With any custody case decided under the Act, the paramount concern is the best interests of the child. 23 Pa.C.S.A. §§ 5328, 5338. Section 5323 of the Act provides for the following types of custody awards:

> (1) Shared physical custody.
>
> (2) Primary physical custody.
>
> (3) Partial physical custody.
>
> (4) Sole physical custody.
>
> (5) Supervised physical custody.
>
> (6) Shared legal custody.
>
> (7) Sole legal custody.

23 Pa.C.S.A. § 5323(a)(1)-(7).

Section 5338 of the Act provides that, upon petition, a trial court may modify a custody order when it serves the best interests of the child. 23 Pa.C.S.A. § 5338. Section 5328(a) sets forth the best-interest factors that the trial court must consider when determining custody and provides as follows:

> **§ 5328. Factors to consider when awarding custody**
>
> **(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which

affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a)(1-16). Trial courts are required to consider "**[a]ll** of the factors listed in section 5328(a) . . . when entering a custody order." *J.R.M. v. J.E.A.*, 33 A.3d 647, 652 (Pa.Super. 2011) (emphasis in original).

Where a request for relocation of a child along with a parent is involved, the Act requires the trial court to consider the following ten relocation factors:

> **(h)** **Relocation factors.--**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:
>
> (1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.
>
> (2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.
>
> (3) The feasibility of preserving the relationship between the non-relocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

> (4)    The child's preference, taking into consideration the age and maturity of the child.
>
> (5)    Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.
>
> (6)    Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.
>
> (7)    Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.
>
> (8)    The reasons and motivation of each party for seeking or opposing the relocation.
>
> (9)    The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.
>
> (10)   Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h). "Section 5337(h) mandates that the trial court shall consider all of the factors listed therein, giving weighted consideration to those factors affecting the safety of the child." ***E.D. v. M.P.***, 33 A.3d 73, 81-82 (Pa.Super. 2011). Additionally, "[w]hen a custody dispute involves a

request by a party to relocate, we have explained 'there is no black letter formula that easily resolves relocation disputes; rather, custody disputes are delicate issues that must be handled on a case-by-case basis.'" ***C.M.K. v. K.E.M.***, 45 A.3d 417, 421 (Pa.Super. 2012) (citation omitted).

We have further explained that:

> Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328(a) custody] factors prior to the deadline by which a litigant must file a notice of appeal." ***C.B. v. J.B.***, 2013 PA Super 92, 65 A.3d 946, 955 (Pa.Super. 2013), ***appeal denied***, 620 Pa. 727, 70 A.3d 808 (Pa. 2013). . . .
>
> In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." ***M.J.M. v. M.L.G.***, 2013 PA Super 40, 63 A.3d 331, 336 (Pa.Super. 2013), ***appeal denied***, [620 Pa. 710], 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). ***Id.***

***A.V. v. S.T.***, 87 A.3d 818, 822-823 (Pa.Super. 2014) (brackets in original).

Similarly, with regard to relocation, we have concluded that:

> sections 5323(d) and 5328 require the trial court to set forth its ***ratio decidendi*** at or near the time it issues its decision in a custody proceeding. We have held that, because the best interests of the child are the paramount concern of any custody case, the trial court must address the sixteen best interest factors

> of section 5328(a) and the ten relocation factors of section 5337(h). **B.K.M. v. J.A.M.**, 50 A.3d 168, 172-75 (Pa.Super. 2012) (finding the trial court erred in failing to consider all section 5328(a) and section 5337(h) factors). Therefore, by logical necessity, today we emphasize that our holding in **C.B.** (**i.e.**, that section 5323(d) requires the trial court to delineate its reasoning at or near the time of its decision) extends to cases that involve both custody and relocation pursuant to section 5337.

**A.M.S.**, 70 A.3d at 835.

Additionally, with regard to relocation, we have held that "[s]ection 5337(h) mandates that the trial court **shall** consider all of the factors listed therein, giving weighted consideration to those factors affecting the safety of the child." **A.M.S.**, 70 A.3d at 836 (citations omitted; emphasis in original).

Here, with respect to the Section 5328 factors, the trial court determined that factors 1, 3, 4, 5, 9, 10, and 12 were neutral and favored both Mother and Father equally. (Trial court opinion, 9/9/16 at 5.) The court further determined that factors 2, 6, 7, 8, 13, 14, 15, and 16 were not applicable. (**Id.**) With respect to factor 11, which considers the proximity of the residences of the parties, the trial court determined that this factor favored Father only because Mother decided to relocate. (**Id.**)

The trial court then proceeded to consider the relocation factors under Section 5337(h) and found as follows:

> First, we consider the nature, quality, involvement and duration of the relationship [Child] has with Father. At [the] hearing, Father testified that he has

a close relationship with [Child]. In the mornings he gets [Child] off to school after breakfast. Although Father is not Catholic, he regularly attends mass with [Child]. Father stated that Mother is the "lead dog" and sometimes she forgets that he is there. Nonetheless, Father expressed that Mother is a wonderful mom, however, he worries that she takes on too much.

Mother testified that she has an excellent relationship with [Child]. Mother has established a routine for [Child] including chores and rules. She has set aside a night for family games and she is involved with [Child's] education and homework. Mother cooks and bathes [Child] and she includes [Child] in the daily responsibilities around the house. Mother has become recently engaged to [M.K.], however, she is careful not to confuse the role [M.K.] plays with that of [Child's] Father. [M.K.] lives near Havertown Twp., and Mother and [M.K.] have purchased a home but the title is in [M.K.'s name] alone. They plan to marry in 2017. We are concerned that Mother and [M.K.] are not yet married and that Mother's name is not on the deed. Mother is currently enrolled at Drexel to complete a Masters in Art Therapy. Mother indicated that she has exhausted all online courses and now her educational goals require her to attend classes in person. In Monroe County, Mother cared for her sick mother, who died in February 2015. Mother also cares for her now adult brother and father, both of whom have Asperger's. Mother's father is a registered sex offender and cannot be alone with [Child], so he is not a resource for Mother or [Child]. Mother indicated that her father will be moving into an apartment in the Havertown Twp. area in the near future. Mother believes that Father should be involved in [Child's] education as much as she is and she stated that Father is a good dad to [Child].

In addition, there was testimony from [M.K.], [R.J.] and [B.J.], Father's mother and father[, respectively,] about the support they will give in caring for [Child]. [M.K.] has a good relationship

with [Child] and he indicated that his job will allow him to work from home. He is pursuing a master's degree in software engineering and his schedule will not conflict with Mother's schedule at Drexel. [R.J.] testified that he is an avid hunter and he does outdoor things with [Child]. He stated that he normally sees [Child] twice a week when he is in Father's custody. [B.J.] also testified. She has a flexible work schedule which will allow her to assist in child care for [Child]. She is concerned that she will see [Child] less if he relocates to Havertown Twp.

In weighing the factors set forth in § 5337(h), we believe that both parents have exhibited excellent involvement in [Child's] life. We are confident that both Mother and Father will remain excellent role models and positive influences.

We next consider [Child's] age, developmental stage, needs and likely impact the relocation will have on his physical, educational and [emotional] development. [Child] appeared before this Court and he exhibits the enthusiasm and energy of a healthy 7 year old boy. We find no issues about [Child's] physical or emotional development which will have an impact by the proposed relocation.

Next, we must consider the feasibility of preserving the relationship between [Child] and Father after relocation. The distance between Havertown Twp. and Monroe County is not significant. As such, we do not believe that this distance will cause logistical problems for maintaining a consistent physical custody arrangement. Although the periods of partial physical custody will be curtailed during the school year, both Mother and Father have agreed to flip the physical custody schedule during the off school months which will permit Father to have a significant period of partial physical custody. Nevertheless, technology makes it possible for Father and [Child] to see and speak to each other every day.

Since [Child] is 7 years old, we will not consider his preference in living primarily with Mother or Father. There is no pattern of conduct by either parent to thwart the relationship of the other. Father and Mother have impressed this Court with their willingness to work with each other to maintain their relationship with [Child] and each other. Mother and Father are the epitome of good parenting.

We find that the relocation will improve Mother's life and especially her desire to continue her educational goals. Mother indicated that [Child] will be starting a new school regardless of which parent is awarded primary physical custody. We believe that [Child] will gain great educational opportunities in the Havertown area. The location is close to Philadelphia and the broad scope of activities, including many historic and cultural opportunities.

Father also presented evidence about the school district which [Child] would attend if the relocation was not granted. The educational opportunities are equivalent; however the historic and cultural advantages are significant in Havertown.

Mother's motivation to relocate is based in large part on her desire to continue her education and her future marriage to [M.K.]. We trust her motives are genuine and that she believes she will be providing [Child] with the advantages found in the Havertown area. Moreover, we believe that Father's opposition to the relocation is also genuine. He is concerned with [Child's] well-being and the general quality of his life. We are astounded by the parenting skills and maturity of each parent and have no doubt they will continue to cooperate and continue to make [Child] their priority even after relocation. We have thoroughly examined the evidence and we believe that the factors weigh more heavily in favor of [Child] relocating to Havertown Twp. While no one factor alone outweighs any other factor, we must consider all the factors together to determine what is best for [Child].

*Id.* at 5-9 (underscoring omitted).

Here, Father first contends that because 15 of the 16 Section 5328(a) factors were either neutral or inapplicable and because the trial court found that the remaining factor, which is factor 11 that considers the proximity of the residences of the parties, weighed in Father's favor, that the trial court erred in not awarding Father primary physical custody. Father's argument is flawed for two reasons. First, it compels the illogical conclusion that where a mother and a father are equally fit to act as their child's primary custodian based upon consideration of the Section 5328 factors, the parent who seeks to relocate would never be awarded primary custody solely because that parent sought such relocation. Second, Father's argument ignores the mandate under the Act that requires the trial court to consider the ten additional factors set forth in Section 5337(h) when determining a request for relocation. Therefore, Father's first claim lacks merit.

Father next contends that Mother failed to satisfy her burden of proving that relocation will serve Child's best interests. In this section of his brief, Father claims that the trial court abused its discretion with respect to its weighing of factor 7 under Section 5337(h), which required it to consider whether relocation will enhance Child's general quality of life. With respect to that factor, the trial court concluded that Mother's relocation to Havertown "is close to Philadelphia and the broad scope of activities, including many historic and cultural opportunities." (Trial court opinion,

9/9/16 at 8.) Father claims that because no evidence was offered with respect to the historic and cultural opportunities offered in Philadelphia or those offered in Monroe County, the trial court abused its discretion by considering evidence outside of the record in making its decision. **See M.P. v. M.P.**, 54 A.3d 950, 954 (Pa.Super. 2012) (reiterating that a trial court may not consider evidence outside of the record in making its decision). (Father's brief at 29-30.) A review of Father's Pa.R.A.P. 1925(b) statement, however, reveals that Father failed to preserve this particular challenge. Therefore, Father waives this claim on appeal. **See In the Interest of B.S.**, 831 A.2d 151, 155 (Pa.Super. 2003) (failing to include claims in Rule 1925(b) statement results in waiver of those claims on appeal).

The remainder of Father's argument with respect to his second issue on appeal requests that we reweigh the Section 5337(h) factors. We have carefully reviewed the record in this case. Additionally, we are quite cognizant of our standard of review. Accordingly, because competent record evidence supports the trial court's reasonable findings and those findings were not the result of an error of law, we must accept the trial court's findings and decline Father's invitation to reweigh the evidence. **See C.R.F.**, 45 A.3d at 443 (reiterating that where a trial court's conclusions are reasonable as shown by record evidence and those conclusions are not the result of an error of law, the appellate court is bound by those conclusions).

In his final issue on appeal, Father contends that "the trial court committed an error of law and/or abused its discretion in failing to consider evidence contrary to relocation." (Father's brief at 36.) In his brief, Father then sets forth selected testimony, followed by the conclusions that Father believes that the trial court should have reached with respect to that testimony. Once again, Father invites us to reweigh the evidence and reach a different result. And once again, we must decline Father's invitation to do so because we are bound by the trial court's conclusions where, as here, those conclusions are reasonable and supported by record evidence. ***See id.***

Order affirmed.

Judgment Entered.

Joseph                     D.                    Seletyn,                    Esq.
Prothonotary

Date: 6/14/2017